**Pennsylvania State Police, Bureau of Liquor Control v. Case Beer and Soda Outlet Inc.**

*Thomas Ballaron,* for appellant.
*Roslyn M. Litman,* for appellee.

DOWLING, *J.,* February 10, 1992—One of the most fertile subjects for comedy is the scenario in which a person who has been either ordered or forbidden to do something tries to get around the restrictions by complying with the directive in letter, but not in spirit. A famous old story from academia recounts how a history professor, angered at what he considered to be his class's inattention, ordered each of them to write a 2,000-word essay on the Spanish Inquisition by the following Monday. One enterprising young man, who did not wish to lose his weekend, promptly went to the library, located two woodcut engravings depicting the tortures of that dread institution, photocopied them, and submitted them to his teacher with the following note: "The Chinese, a people famed for their wisdom for many centuries, have always held that one picture is worth a thousand words. Enclosed please find your 2,000 word essay." We are not told what effect this line of reasoning had on the course of the young man's later scholastic career.[1]

In the case at bar, we are compelled to consider whether a particular use of lists and handbills qualifies as "advertising" under the authority of the Liquor Code,

---

1. Even the holiest of mortals are not beyond employing this type of thinking. A biographer of the widely esteemed St. Elizabeth of Hungary recounts how Elizabeth's spiritual director, the severe Konrad von Marburg, having noticed how much pleasure it gave his disciple to give money to the poor, instructed her that there was an element of personal pride in her charity, and commanded that she was thereafter to give only one penny to each poor person she met. "When he found that she had gotten around this by having some pure-silver pennies coined," recounts the historian, "he may be forgiven for showing anger."

or whether it must be held to be outside that law's prohibitions in both form and substance.

The licensee (and appellee) in the instant matter, Case Beer and Soda Outlet Inc. (hereinafter "CBSO"), is a distributor of malt and brewed beverages which supplied to its customers, on its premises, a stack of handbills which contained price lists, covering the brands and prices of beer, the name, address and telephone number of CBSO, CBSO's location in relation to the nearest major highway exit, and the phrase, "guaranteed lowest beer prices; we'll match any competitor's special." In addition, CBSO had placed a notice in a local newspaper which stated in part, "Beer prices are top secret. Since it is illegal to advertise beer prices, you will have to stop by and pick up a copy of our price list."

A panel of three administrative law judges heard the instant matter on January 23-24, 1990, following the issuance of three citations by the Bureau of Liquor Control Enforcement on November 10, 1988, charging CBSO with violations of both Pennsylvania law, the Liquor Control Board regulations, and the Liquor Code.

The panel dismissed the citations as to the alleged LCB regulations, but did find that CBSO's handbills and newspaper advertisement violated section 498 of the Liquor Code. This reads in pertinent part:

"No manufacturer, wholesaler, retailer or shipper whether from outside or inside this Commonwealth and no licensee under this act shall cause or permit the advertising in any manner whatsoever of the price of any malt beverage, cordial, wine or distilled liquor offered for sale in the Commonwealth: Provided, however, that the provisions of this section shall not apply to price signs or tags attached to or placed on mer-

chandise for sale within the licensed premises in accordance with rules and regulations of the board."

Because of these findings by the ALJ panel, a $1,000 fine and three days suspension were levied against CBSO. CBSO then appealed to the LCB, which reversed the ALJ's adjudication and dismissed the citations. The bureau then appealed the matter to this court.

It has invoked a number of specters in the course of its reasoning: none of them wholly without substance, and yet all ultimately leading us to the response given by Scrooge to Marley's ghost, "There's more gravy to you than grave."[2] The appellant's first line of argument is to contend that the mere fact that the handbills contained the store's address, telephone number and location vitiate any claim that they are an "in-house shopping aid," and that any patron who "had already evidenced his decision to purchase alcoholic beverages by entering the licensed premises" would have no need of them. We cannot agree. The price lists fulfill no function that could not be accomplished, in a more laborious fashion, by the customer himself by trudging around the store looking at each commodity and writing down its cost.[3] Since the labelling of the individual bottles is clearly lawful, it is difficult to see how a

2. Charles Dickens, *A Christmas Carol.*

3. Anyone who buys beer in this Commonwealth knows that a bizarre desire to make the purchase of alcoholic beverages more burdensome, even to lawful consumers, without actually prohibiting it, is a commonplace feature of regulations on the subject. One can, for example, buy any number of six-packs that one likes, but can only carry them off the premises in increments of two; a rule whose purpose and effect is clear to no one. If it is argued, as it has been, that this attitude is a remnant of American puritanical severity towards harmless pleasure, one can only assume that the

simple collation of these bits of information can be otherwise. Nor is it clear that anyone who entered the appellee's place of business can be said to have already made "a decision to purchase alcoholic beverages." Such a person may in fact be doing comparison shopping, in which case the price lists would perform a perfectly valid function as a consumer guide.

As to the other facts included on the bills, it is self-evident that people generally like to have a clear idea of where a retail outlet of any kind is. In addition, all of the information cited (apart from the description of the location) would be freely available to the customer in any telephone book. We cannot see how a recitation of facts that are already extant in a source of unimpeachable value and character can be said to be an "advertisement," within the meaning of section 498.

Nor are we troubled by the effect of the newspaper notice considered in tandem with the handbills. While there is undeniably a comic element—as we noted at the outset of this opinion—in the sight of a person tweaking the nose of a regulation by ostentatiously complying with it in a technical sense, while winking at it in a more profound way, this approach does not, in itself, make the actor a violator of the law. The simple fact remains that no one could ascertain any substantive information at all from the newspaper, standing on its own. This distinguishes the situation from that of the old Burma-Shave signs, referred to by the bureau, in which a series of billboards along the road collectively spelled out a message. Here, the newspaper

person advancing such an explanation has never heard of the statement of that renowned Puritan, Increase Mather (1639-1723)—father of the even more famous Cotton—who declared, "Wine and spirits are gifts of God, and should be received and accepted with thankfulness."

notice and the price lists were separate entities, not parts of a great whole; and neither can be said to violate section 498.

The dangers of extracting one part of a genuinely integrated advertisement from the whole were made clear a few years ago, when the celebrated Essex House hotel in New York suddenly experienced a surge in business one night, for no apparent reason. Upon investigation, it was discovered that the first two letters of "Essex," in the large neon sign which stood on the roof, and which could be seen for miles, had burned out.

Nor are we persuaded by the appellant's citation to the case of *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. CIC Investors, T.A. Flanigans,* Citation no. 91-0307 (October 7, 1991). In that case, a recorded telephone message quoted prices to callers; a condition which had the effect of directly conveying pricing information off the premises. This was a circumstance clearly violative of the prohibitions laid down in the Liquor Code. There is a clear distinction between advertising or promotion techniques that are clearly aimed by their creators, like film projectors, at carrying a beam of information off the site; and those, like handbills, which are passive and inert, and can only be taken away if the customer exerts himself to do so. In the case at bar, the handbills are intended for use on the premises; the fact that they can be physically carried off is of little significance, since a buyer with a good memory can "carry off" the same data after examining the different bottles on his own.

In closing, we will say that this court is acutely aware, as its past rulings indicate, of the many problems which the abuse of alcohol has brought upon our country. However, our philosophy on this aspect of social policy

was expressed in an earlier decision that dealt with what we termed "the pointless, maddening, inexcusable slaughter caused by drunken driving." *Estate of Reigel v. Givler, et al.,* 110 Dauphin L.J. 193 (1990), wherein we stated: "None of the above should be interpreted as a call for a return to the days of prohibition. All societies need safety valves through which their members can 'blow off steam' and moderate alcohol use is one of the few avenues of recreation open to people of modest means that is affordable, and which need not have unfortunate consequences." Id. at 194. (emphasis in original) We are not persuaded that the behavior of the appellee in this case is either in violation of the law, or of such a tendency as to encourage the darker aspects of alcohol use.

Accordingly, we enter the following

ORDER

And now, February 10, 1992, we dismiss the appeal of the Bureau of Liquor Control Enforcement and affirm the decision of the Pennsylvania Liquor Control Board.